Filed 6/10/14  P. v. Ramirez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057173 |
| v. | (Super.Ct.No. RIF1102660) |
| MIGUEL ANGEL RAMIREZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jeffrey J. Prevost, Judge. Affirmed with directions.

Paul J. Katz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lynne G. McGinnis, and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

1

I

INTRODUCTION

Defendant Miguel Angel Ramirez appeals from judgment entered following jury convictions for four counts of battery (Pen. Code,[1] § 242; counts 1-4) and assault (§ 240; count 6), lesser included offenses of rape and sexual penetration of a minor (§§ 261, subd. (a)(2), and 289, subd. (i)). The court dismissed count 5 (sexual battery) pursuant to section 1118.1. Defendant was sentenced to an aggregate term of 180 days in county jail, and released with credit for time served.

Defendant contends the trial court committed prejudicial error by failing to give a unanimity jury instruction, violating his right to a speedy trial, and depriving him of a *Marsden* hearing. Defendant also contends his battery and assault convictions were time-barred and his $100 restitution fine should be eliminated. We conclude there was no prejudicial error and affirm the judgment, with the exception the trial court erred in not eliminating his $100 restitution fine by crediting two of defendant's excess days in custody.

II

FACTS

In 2003, defendant began sexually abusing V.M. when she was 14 or 15 years old. At the time, V.M.'s older sister, Y.M. was dating defendant, who was approximately six

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

2

years older than V.M.  Defendant subsequently married Y.M.  When V.M. first met defendant, she was living with her family in Rowland Heights, where she lived until she was 15 or 16 years old.  The first incident occurred at V.M.'s home in Rowland Heights, in the hallway.  As defendant walked past V.M., he rubbed her buttocks with his hand.  This happened again many times.

On another occasion, while defendant was in V.M.'s bedroom at the Rowland Heights home using the computer, V.M. entered her bedroom.  Defendant closed the door and put his hand on V.M.'s leg and rubbed her thigh.  V.M. objected but did not say anything to defendant because she was scared, nervous, and did not know what to say.  Afterwards, V.M. left and defendant went back to the computer.  V.M. was around 15 years old.  Defendant subsequently touched V.M. many more times in her bedroom, when he came to see Y.M. at the Rowland Heights home.  He touched V.M.'s breasts, buttocks, and "vagina."[2]  He began putting his hands on her shirt and underneath it.  V.M. never said anything to defendant and did not tell anyone.  Defendant told her, "Better not say anything or no one is going to believe you," and "I know this is what you want."  It was not what V.M. wanted but she just sat silently and let him touch her, with the exception of once, when she tried to walk away and defendant told her, "No one is going to believe you, and this is what you want, and you better not say anything."  V.M.

---

[2]  V.M. used the word "vagina" but may have meant the genital area, if not also the vagina.  Although the word "vagina" is used in the testimony, the vagina is an internal organ, defined as "a canal that leads from the uterus of a female mammal to the external orifice of the genital canal."  (Webster's 3d New Internat. Dict. (1993) p. 2528.)

then just stood there and did not know what else she could do. Defendant kept saying, "You better not say anything."

On one occasion, while living in Rowland Heights, on Thanksgiving Day, V.M.'s mother told defendant to drive V.M. to the store to get something she needed. While on the way to the store, defendant touched her. On the way back home, he pulled over in an alley by a Jack-in-the Box, unzipped his pants, put V.M.'s hand on his penis, and forced V.M. to masturbate him. Defendant told her not to tell anyone what he had done. When defendant first grabbed her hand, she left her hand in her lap. When he then pulled her hand harder, she moved it. V.M. did not recall saying anything to defendant when he did this. She just sat in the car because she did not know what to do or where to go. V.M. did not tell anyone what had happened when they returned home.

Defendant and Y.M. moved to an apartment in Upland. During the summer, when V.M. was 15 or 16 years old, she visited Y.M. for the day or stayed at Y.M.'s home in Upland for a couple days. This was when defendant's sexual abuse escalated.

When V.M. was visiting Y.M. at defendant and Y.M.'s Upland apartment, defendant came home from work in the afternoon, before Y.M. V.M. was sitting on the couch watching TV. Defendant got up from another couch, moved to the couch where V.M. was sitting, and started touching her. Defendant put his hand on her leg. In an attempt to try to stop him from touching her, V.M. "scooted over." Defendant told V.M. to lie down. V.M. just sat there. Defendant moved her so he could take off her shorts.

4

She did not say anything or push him away. She just wiggled to try to move. She was scared. Defendant unzipped his pants and put his penis inside her. V.M. just laid there. Defendant withdrew his penis, and went to another room for awhile.

During the incident, V.M. did not say anything. She was afraid of defendant. She feared he would hurt her sister. Defendant had told V.M. that if Y.M. disappeared, no one would ever know he was responsible. He said there were many husbands who had gotten away with killing their wives, and so could he. V.M. did not tell Y.M. defendant had had intercourse with her.

In 2005, when V.M. was 16 years old and a junior in high school, her family moved to Corona. V.M. temporarily lived with her aunt and continued going to school in Rowland Heights. Because V.M.'s father wanted her to live at home, she moved from her aunt's home to her family's home in Corona. V.M.'s father allowed defendant and Y.M., who were married, to move in, conditional upon defendant driving V.M. to school every day.

Defendant drove V.M. to school every day until she got sick and stopped going to school. When defendant drove V.M. to school, he touched her every day. He touched her on her legs, between her legs, and in her shirt. He touched her over and under her clothing while driving. V.M. did not say anything to him or move his hand away because she was scared. She did not know what he would do. He told her not to tell anyone. He

told her he would hurt her sister if she told anyone, and said no one would believe her and they would think she was lying.

Defendant had intercourse with V.M. three times after V.M. moved to Corona. The first incident occurred when V.M. was 16 years old, several months after the incident in Upland. Defendant followed V.M. into her bedroom, closed the door, and locked it. No one else was home at the time. Defendant told V.M. to lie down. V.M. did not want to but did not tell defendant. After she lay down, defendant took off her pants, took off his pants, and put his penis in her. V.M. did not remember what she said. She only remembered defendant telling her to be quiet and shut up. She thinks she said, stop, or moved, and defendant got mad at her. V.M. was scared. Afterwards, she cried.

There were two additional times defendant had intercourse with V.M. The second incident in Corona was also in her bedroom. It occurred a few weeks after the previous incident. As V.M. was going into her room wearing just a towel, defendant came in her room and closed the door. V.M. had been unaware defendant was home then. No one else was at her home. Defendant told her to lie down. As she sat on her bed wearing her towel, defendant took off his pants, removed her towel, moved V.M.'s hand to her side, and had intercourse with her. V.M. was scared. She did not try to push him away because he was holding her arm.

The third and last time defendant had intercourse with V.M. in Corona, occurred in 2005, several months after the previous incident. V.M. was 16 years old. When V.M.

6

went to her brother's upstairs bedroom to look for a movie, defendant followed her into the room. V.M.'s mother and siblings were outside on the driveway. Defendant grabbed V.M.'s shoulder, pushed her onto the lower bunk bed, and forced her to lie down. While lying down, defendant pulled off her shorts, pulled down his pants, and then started to have intercourse with V.M. Several times he inserted his penis in her but stopped to look out the window to see where V.M.'s family was. Defendant then returned and reinserted his penis in V.M. V.M.'s family had just gotten home.

The first time defendant digitally penetrated her vagina was when she was 15 years old. She was 16 years old during the last of the four times defendant had intercourse with her. V.M. had no contact with defendant after he left in 2006. During the four incidents of intercourse, defendant did not punch her, physically hurt her, or use a weapon. He threatened her when she lived in Corona. While defendant was in the kitchen, he picked up a big knife, twirled it, and then looked towards V.M., and smiled. V.M. took this as a threat. She thought that if she said anything, he would use the knife on her sister.

In 2006, defendant and Y.M. separated, and divorced in 2007. In late 2008, V.M. disclosed the abuse for the first time to her girlfriend, V.R. V.M. first told Y.M. about defendant's sexual abuse when Y.M. asked V.M. in a text message if she had had intercourse with defendant. V.M. texted her back, stating that defendant had raped her.

7

V.M. then told Y.M. everything that had happened. V.M. told Y.M. a few days before she told the police at Y.M.'s urging.

Sheriff's investigator Joel Pabelico testified that when he interviewed V.M., she was very distraught and shy. Pabelico also interviewed defendant, who denied ever touching V.M. Defendant claimed Y.M. and V.M. made up the sexual assault and rape allegations because Y.M. and defendant were in the midst of a child custody battle. Defendant also denied having consensual sex with V.M.

III

UNANIMITY INSTRUCTION

Defendant contends the trial court erred in failing to give a unanimity instruction, which defendant argues was necessary because the jury could have disagreed on the act supporting each conviction. Defendant contends there was evidence of numerous encounters between defendant and V.M. that could have supported each of defendant's five convictions for battery and assault. The People argue a unanimity instruction was not necessary and, even if it was, any such error was harmless.

In a criminal case, a jury verdict must be unanimous. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) The unanimity requirement is founded on the constitutional principle that a criminal defendant is entitled to a verdict in which all 12 jurors agree, beyond a reasonable doubt, as to each count charged. (*People v. Brown* (1996) 42 Cal.App.4th 1493, 1499-1500, citing Cal. Const., art. I, § 16 and *People v. Jones* (1990)

8

51 Cal.3d 294, 305, 321; see also *People v. Hernandez* (2013) 217 Cal.App.4th 559, 570 ["The importance of the unanimity instruction is rooted in the Fourteenth Amendment to the United States Constitution's requirement that all criminal defendants are afforded due process of law."].) "'When the evidence tends to show a larger number of distinct violations of the charged crime than have been charged and the prosecution has not elected a specific criminal act or event upon which it will rely for each allegation, the court must instruct the jury on the need for unanimous agreement on the distinct criminal act or event supporting each charge. . . .'" (*People v. Whitham* (1995) 38 Cal.App.4th 1282, 1295.)

When there is evidence "jurors might disagree as to the particular act defendant committed, the standard unanimity instruction should be given. [Citation.] But when there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them, the jury should be given a modified unanimity instruction which, in addition to allowing a conviction if the jurors unanimously agree on specific acts, also allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim." (*People v. Jones, supra,* 51 Cal.3d at pp. 321-322.) Whether a particular instruction should have been given in a case is a predominantly legal question reviewed under the de novo standard. (See *People v. Waidla* (2000) 22 Cal.4th 690, 733.)

9

In the instant case, defendant was charged with four counts of rape (§ 261, subd. (a)(2); counts 1-4) and one count of sexual penetration of a minor. (§ 289, subd. (i); count 6). The People specified in the information that count 1 occurred between January 1, 2003, and July 29, 2004, in San Bernardino County; count 2 occurred between January 1, 2003, and July 29, 2004, in Riverside County; and counts 3 and 4 occurred between July 30, 2004, and July 29, 2005, in Riverside County. Rowland Heights is in Los Angeles County, Upland is in San Bernardino County, and Corona is in Riverside County. Therefore, count 1, which was committed in San Bernardino County, was limited to defendant's acts in Upland. The other three counts pertain to intercourse committed in Riverside County, which would have been limited to the three acts of intercourse committed in Corona.

Although the jury found defendant guilty of four counts of battery, as lesser included offenses of the four counts of rape, the People specified in the complaint that counts 1 through 4 pertained to the four incidents of intercourse, one of which occurred in Upland and three which occurred in Corona. There was no evidence of any other acts of intercourse.

In addition, during closing argument, both the prosecutor and defense counsel indicated that counts 1 through 4 for rape concerned the four incidents in which defendant allegedly had intercourse with V.M. During rebuttal, the prosecutor explained that the four charged rapes consisted of one in Upland and three in Corona. The

10

prosecutor further stated that two of the rapes in Corona were committed in V.M.'s bedroom and the third rape in Corona was committed in her brother's bedroom. A unanimity instruction was not required for counts 1 through 4, since the evidence does not tend "'to show a larger number of distinct violations of the charged crime than have been charged.'" (*People v. Whitham, supra,* 38 Cal.App.4th at p. 1295.) Also, the prosecution made clear the four specific criminal acts or events upon which it relied for each of the four counts of rape. (*Ibid.*)

As to count 6 for sexual penetration (§ 289, subd. (i)), the only evidence presented to support this charge was testimony that defendant inserted his fingers in V.M.'s vagina. The court instructed the jury that "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant participated in an act of sexual penetration with another person; [¶] 2. The penetration was accomplished by using a foreign object, or substance, or instrument, or device, or unknown object; [¶] 3. The defendant was at least 21 years old at the time of the act; [¶] AND [¶] 4. The other person was under the age of 16 years at the time of the act."

V.M. testified that defendant had digitally penetrated her vagina. She was 15 years old when he first did this. There was no other evidence of any specific incidents or when they occurred. Therefore, there would not have been juror disagreement as to any particular acts. The only question was whether or not defendant digitally penetrated

11

V.M.'s vagina and her age at the time of the offense. (*People v. Jones, supra,* 51 Cal.3d at pp. 321-322.) Under these circumstances, a unanimity instruction was not required.

Even if a unanimity instruction was necessary, any such error was harmless under both the *Watson*[3] and *Chapman*[4] harmless error standards. The jury's guilty verdicts for the lesser included offenses of battery (counts 1-4) and assault (count 6) indicate that, although the jury concluded the prosecution had not proven the charged offenses, the jury did not believe defendant's defense that he did not touch V.M. during the four incidents charged as rape or during the digital penetration. The verdicts also show that the jury likely found that, as to counts 1 through 4, the prosecution failed to prove the element of using force or fear when defendant committed the four acts of intercourse. As to count 6, the jury quite likely concluded that the prosecution failed to prove the requisite element that defendant was over the age of 21 when he committed the alleged digital penetration.

The absence of a unanimity instruction therefore was harmless beyond a reasonable doubt, since the battery and assault verdicts would have been entered even if a unanimity instruction had been given.

---

[3] *People v. Watson* (1956) 46 Cal.2d 818, 836-837.
[4] *Chapman v. California* (1967) 386 U.S. 18, 24.

IV

RIGHT TO A SPEEDY TRIAL

Defendant argues the trial court violated his federal and state Constitutional rights to a speedy trial by granting several trial continuances without good cause. We conclude there was no violation of defendant's constitutional right to a speedy trial since there was good cause to continue the trial and defendant has not established prejudicial harm.

A. *Procedural Background*

In the instant case, defendant did not initially object personally to the trial court continuing the court proceedings and trial. Defendant was arraigned on the charges on June 3, 2011. At the felony settlement conference on June 14, 2011, the court granted defendant's substitution of attorney motion and the public defender was relieved as defendant's attorney. Defendant retained private counsel who requested a continuance of the matter. The trial court granted the continuance and continued the matter to July 7, 2011, on the ground defense counsel needed additional time for preparation of the defense. On July 7, 2011, the court ordered the amended complaint filed and set arraignment for July 29, 2011. On July 29, 2012, the parties stipulated to continue the arraignment hearing. The court accordingly granted a continuance of arraignment to August 30, 2011. Defendant waived the time for arraignment to August 30, 2011.

On August 30, 2011, the prosecution moved to continue the hearing, and defendant did not oppose the motion. The trial court continued the matter to September

13

28, 2011. On September 28, 2011, the prosecution moved to amend the complaint. The court granted the motion and arraigned defendant on the second amended complaint. Defendant waived the time for the preliminary hearing to October 28, 2011, plus 10 court days. The court set a felony settlement conference on October 28, 2011.

On October 28, 2011, the parties stipulated to continuing the felony settlement conference to November 18, 2011, because the parties believed the case would be resolved. Defendant waived the time for continuing the preliminary hearing to November 18, 2011, plus 10 court days. At the felony settlement conference on November 18, 2011, the parties stipulated to continue the hearing to December 16, 2011, and defendant waived the time for the preliminary hearing to December 16, 2011, plus 10 court days. At the felony settlement conference on December 16, 2011, the court set the preliminary hearing for January 24, 2012, and defendant waived the time, plus five court days.

On January 24, 2012, the trial court conducted a preliminary hearing in the case, held defendant to answer the charges, and set arraignment on the Information for February 7, 2012. On February 7, 2012, the trial court granted defendant's private attorney's motion to substitute out and defendant's request to be represented by the public defender. The court also granted defendant's unopposed motion to continue the arraignment hearing, and defendant waived time for arraignment on the Information to February 21, 2012. The arraignment hearing was continued to that date.

On February 21, 2012, defendant waived formal arraignment and pled not guilty to the charges. Trial was set for April 17, 2012. At the trial readiness conference on April 5, 2012, the parties stipulated to continuing the trial and defendant waived time for trial to April 10, 2012, plus 30 days. On April 10, 2012, the trial court granted defendant's unopposed motion to continue the hearing to April 12, 2012, and defendant waived time for trial to April 12, 2012, plus 30 days.

On April 12, 2012, the parties stipulated to continuing the trial readiness conference to May 15, 2012, and defendant waived time for trial to May 15, 2012, plus 30 days. On May 15, 2012, the trial court set trial for June 12, 2012, with the last day for trial to begin on June 22, 2012.

It was not until June 12, 2012, that defendant personally objected to any further trial continuances. On June 12, 2012, defendant's attorney, Douglas Miranda, requested a trial continuance because he was engaged in trial in another case, defendant had requested a *Marsden*[5] hearing and the court clerk had said there were no available courtrooms available at the present time. Miranda also told the court defendant was not willing to waive time to try the charges against him. The trial court granted defense counsel's request for a trial continuance up to July 30, 2012, noting that defendant had a constitutional right to a prepared attorney. The court ordered the trial was continued to

---

[5] *People v. Marsden* (1970) 2 Cal.3d 118.

15

July 20, 2012, concluding Miranda "wouldn't ask for it if it wasn't reasonable. You've got to have a prepared attorney; no two ways about it."

On July 19, 2012, Miranda filed a motion requesting continuance of the trial to October 1, 2012, on the grounds Miranda's office needed additional time to finalize several transcripts for the trial and Miranda would be attending a previously scheduled death penalty seminar from July 20 to July 27, 2012. In addition, Miranda stated in his supporting declaration that he would not be prepared to represent defendant adequately if the trial was not continued.

On July 20, 2012, the trial court explained to defendant that his attorney had requested continuing the trial until October 1, 2012, because Miranda needed a little more time to prepare for trial, since it was a complicated case. Defendant objected. The trial court continued the hearing to July 25, 2012, for an update on Miranda's status, since Miranda was unavailable at the hearing on July 20. On July 25, 2012, the trial court granted Miranda's motion to continue the trial, over defendant's objection, and continued the matter to August 1, 2012.

On August 1, 2012, Miranda explained to the court that defendant's case had been sent out for trial that day but the judge had suggested continuing the trial to August 14, 2012. The court then asked defendant if he agreed to waive time so that the trial could begin on August 14, 2012. Miranda told the court defendant objected to continuing the trial but Miranda was nevertheless requesting a continuance because he was engaged in

16

trial, which he anticipated completing on August 10. The trial court granted a continuance until Miranda completed trial in the other case, and ordered the case to trial on August 14, 2012. On August 14, 2012, the court heard motions in limine, ordered the trial to trail one day, and began jury selection on August 15, 2012.

B. *Applicable Law*

Defendant's right to a speedy trial is a fundamental right "guaranteed by the state and federal Constitutions. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) The Legislature has also provided for '"a speedy and public" trial as one of the fundamental rights preserved to a defendant in a criminal action. (§ 686, subd. 1.)' [Citation.] To implement an accused's constitutional right to a speedy trial, the Legislature enacted section 1382. [Citation.]" (*Rhinehart v. Municipal Court* (1984) 35 Cal.3d 772, 776.)

Section 1382 "'constitutes a legislative endorsement of dismissal as a proper judicial sanction for violation of the constitutional guarantee of a speedy trial and as a legislative determination that a trial delayed more than [the prescribed period] is prima facie in violation of a defendants constitutional right.' [Citation.] Thus, an accused is entitled to a dismissal if he is 'brought to trial' beyond the time fixed in section 1382. [Citation.]" (*Rhinehart v. Municipal Court, supra,* 35 Cal.3d at p. 776.)

Under section 1382, subdivision (a)(2), a defendant accused of a felony must be brought to trial within 60 days of arraignment on an information. If the defendant requests or consents to trying the case beyond the 60-day period, the defendant must be

brought to trial on the date set for trial or within 10 days thereafter. (§ 1382, subd. (a)(2).)

## C. Forfeiture

On four occasions, defendant personally objected to the trial court continuing the trial. He objected on June 12, 2012, July 20, 2012, July 25, 2012, and August 1, 2012. On each occasion, Miranda did not file a motion to dismiss the case based on a violation of defendant's speedy trial rights in the lower court. "A defendant's consent that his trial be set for a date beyond the limit prescribed 'is equivalent to a postponement upon his application' [citation] and hence constitutes a waiver of the right; and consent will be *presumed* if the defendant fails to take the necessary procedural steps of making timely objection to such delay *and* thereafter moving for dismissal [citation]." (*People v. Wilson* (1963) 60 Cal.2d 139, 146; original and added italics.) Hence, "[t]he right to a speedy trial must therefore be asserted, if at all, in the court where the prosecution is pending, and prior to the commencement of trial. [Citation.] It is too late to raise the point for the first time on appeal. [Citations.]" (*Ibid.*) This includes if a defendant objects to the date set but fails to file a timely motion to dismiss. (*Ibid.*) A defendant must demand a motion to dismiss. (*Id.* at p. 147; *Castaneda v. Municipal Court* (1972) 25 Cal.App.3d 588, 593-594.) Defendant thus forfeited any claim of violation of his rights to a speedy trial by failing to take the necessary steps to file a motion to dismiss the charges as required.

18

*D. Ineffective Assistance of Counsel*

Defendant alternatively argues that, if his speedy trial objection was forfeited because he did not file a motion to dismiss, forfeiture does not apply because his attorney was ineffective in not filing a motion to dismiss and not challenging the rulings continuing the trial. Defendant asserts that, in this regard, his attorney's conduct "fell below the standard of reasonableness and that he was prejudiced by that conduct." (*People v. Espiritu* (2011) 199 Cal.App.4th 718, 725.)

To secure the reversal of a conviction based on ineffective assistance of counsel, a defendant must show (1) his counsel's performance was deficient when measured against the standard of a reasonably competent attorney, and (2) counsel's deficient performance so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. The appellate court must presume counsel's conduct fell within the wide range of reasonable professional assistance and accord great deference to counsel's tactical decisions. (*People v. Lewis* (2001) 25 Cal.4th 610, 674.)

Further, because it is inappropriate for a reviewing court to speculate about the tactical reasons for counsel's actions, when the reasons are not readily apparent in the record, the court will not reverse unless the record discloses no conceivable tactical purpose. (*People v. Lewis, supra,* 25 Cal.4th at pp. 674-675.) If the record sheds no light on the reasons for counsel's actions, a claim of ineffective assistance is more

appropriately decided in a habeas corpus proceeding.  (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

Here, the record shows that each of the four continuance requests was reasonable and founded on conceivable tactical reasons, which included being available and prepared for trial.  In addition, the continuances were relatively brief (38 days, five days, seven days, and 13 days); the case was not a relatively old case, as noted by the court; the trial began within six months of defendant's arraignment on the second amended information on February 12, 2012, and within approximately 60 days after expiration of the last period of time defendant had personally agreed to (June 15, 2012).

Under these circumstances and, according great deference to counsel's tactical decisions, we cannot say defense counsel's conduct of requesting the four brief trial continuances and not filing motions to dismiss, fell below the standard of reasonableness or that defendant was prejudiced by Miranda's conduct.  (*People v. Espiritu, supra,* 199 Cal.App.4th at p. 725.)  Defendant argues he was prejudiced by being deprived of his right to a speedy trial because he ultimately served 267 days of "dead time" in jail, which could have been avoided had his attorney filed a successful motion to dismiss.  But it is highly unlikely that the trial court would have granted a motion to dismiss based on the brief continuances, which were necessary in order for defense counsel to be present and fully prepare for trial.  Defendant has not demonstrated ineffective assistance of counsel.

*E. Good Cause for the Continuances*

Defendant contends there was not good cause for the four continuances in June, July, and August 2012. He argues that the trial court erred in finding good cause for delaying trial based on Miranda being engaged in another trial, attending a previously scheduled legal seminar, and needing additional time to prepare for trial. Defendant also asserts that courtroom congestion is not a valid basis for violating his right to a speedy trial. Defendant argues that there was nothing in the record suggesting that these scheduling conflicts and factors were unexpected or out of the ordinary.

We note that it was not until June 12, 2012, that defendant personally objected to any further continuances of the trial. Up until that time, defendant had agreed to the continuances and to waive his right to a speedy trial. As discussed above, the subsequent four continuance requests by Miranda were because Miranda was engaged in trial, Miranda needed additional time to prepare, additional time was needed to complete transcripts for trial, and Miranda wanted to attend a previously planned legal seminar. The record does not show that defendant's trial was continued because of courtroom congestion.

"'A continuance granted at the request of counsel normally constitutes . . . good cause [citation], at least in the absence of evidence showing incompetency of counsel [citation] or circumstances where counsel's request for a continuance is prompted only by the need to [serve] other clients and the defendant himself objects to the delay.

21

[Citation.]'" (*People v. Memro* (1995) 11 Cal.4th 786, 852-853, quoting *People v. Wright* (1990) 52 Cal.3d 367, 389.) Here, there was no showing Miranda was incompetent or that the continuances were solely based on his need to serve other clients. The record shows that the continuances were based on, not only Miranda being engaged in trial, but also on Miranda needing additional time to prepare for trial.

While some of the reasons for requesting the four continuances, alone, might not constitute good cause to continue the trial, there was a sufficient basis for finding good cause for the four continuances based on the totality of the circumstances. Miranda indicated he needed additional time to adequately prepare for defendant's trial. In addition, the continuances were relatively brief; the case had not been pending very long; and the trial had been continued once before the request for a continuance on June 12, 2012. "If counsel seeks reasonable time to prepare a defendant's case, and the delay is for defendant's benefit, a continuance over the defendant's objection is justified." (*People v. Lomax* (2010) 49 Cal.4th 530, 556.)

We conclude there was good cause for granting the four brief continuances when counsel announced he was engaged in another trial and not ready to try defendant's case. "'Although a criminal defendant may not be deprived of a speedy trial because the prosecution—or the defense—is lazy or indifferent, or because the prosecution seeks to harass the defendant rather than bring him fairly to justice, a criminal defendant may not juggle his constitutional rights in an attempt to evade prosecution. He may not demand a

speedy trial and demand adequate representation, and, by the simple expedient of refusing to cooperate with his attorney, force a trial court to choose between the two demands, in the hope that a reviewing court will find that the trial court has made the wrong choice.' [Citation.]" (*People v. Lomax, supra,* 49 Cal.4th at p. 556.) Based on the totality of the circumstances, the trial court did not abuse its broad discretion in determining good cause existed to grant the brief trial continuances. (*People v. Sutton* (2010) 48 Cal.4th 533, 546.)

## F. *Prejudice*

Defendant has also not demonstrated he was prejudiced by the four continuances of his trial in June, July, and August 2012. Post conviction review of a speedy trial claim requires that the defendant show prejudice flowing from the delay of the trial. (*People v. Martinez* (2000) 22 Cal.4th 750, 769; *People v. Johnson* (1980) 26 Cal.3d 557, 574.) Defendant argues he does not have to show prejudice since remand is required based on other reversible errors raised in this appeal, such as the trial court's failure to give a unanimity instruction and provide a *Marsden* hearing. Defendant further argues that, assuming this court rejects those errors, the trial delay was prejudicial because he was incarcerated for 56 days in excess of his sentence, resulting in (1) unwarranted prolonged imprisonment and (2) anxiety and public suspicion of defendant facing untried accusations.

23

The four continuances, amounting to a total of 63 days, did result in extending defendant's incarceration, resulting in defendant remaining in custody for 56 days in excess of his sentence but this was attributable in large part to delays up until June 12, 2012, defendant and his attorney agreed to. Furthermore, as discussed above, the four continuances defendant objected to were for good cause and relatively brief.

The state constitutional right to a speedy trial "'"serves a three-fold purpose . . . ."'" [Citation.] "'"It protects the accused . . . against prolonged imprisonment; it relieves him of the anxiety and public suspicion attendant upon an untried accusation of crime; and . . . it prevents him from being 'exposed to the hazard of a trial, after so great a lapse of time' that 'the means of proving his innocence may not be within his reach'—as, for instance, by the loss of witnesses or the dulling of memory."'" [Citation.] The question posed in evaluating a speedy trial claim is whether delay at the state's hands unreasonably prejudices these interests. [Citations.] The test is necessarily a balancing one: 'prejudice to the defendant resulting from the delay must be weighed against justification for the delay.' [Citation.]" (*Craft v. Superior Court* (2006) 140 Cal.App.4th 1533, 1540.)

Similarly, once the federal constitutional speedy trial right attaches, courts balance four criteria to determine whether the right has been violated: (1) the length of the delay; (2) whether the government or the defendant is more to blame for the delay; (3) whether the defendant asserted his right to a speedy trial in due course; and (4) whether the defendant suffered prejudice from the delay. (*Doggett v. United States* (1992) 505 U.S.

24

647, 651-652; *Vermont v. Brillon* (2009) 556 U.S. 81, 90.)  Under the federal

Constitution, an uncommonly long delay creates a rebuttable presumption of prejudice.

(*People v. Lowe* (2007) 40 Cal.4th 937, 942.)  In contrast, when only the state

constitutional speedy trial right applies, the defendant has the initial burden to

affirmatively show prejudice; the burden then shifts to the prosecution to show

justification for the delay; and then the court weighs the justification against the actual

prejudice suffered by the defendant.  (*Ibid.*)

The length of the delay "is actually a double enquiry.  Simply to trigger a speedy

trial analysis, an accused must allege that the interval between accusation and trial has

crossed the threshold dividing ordinary from 'presumptively prejudicial' delay, [citation]

since, by definition, he cannot complain that the government has denied him a 'speedy'

trial if it has, in fact, prosecuted his case with customary promptness.  If the accused

makes this showing, the court must then consider, as one factor among several, the extent

to which the delay stretches beyond the bare minimum needed to trigger judicial

examination of the claim.  [Citation.]  This latter enquiry is significant to the speedy trial

analysis because . . . the presumption that pretrial delay has prejudiced the accused

intensifies over time." (*Doggett v. United States, supra,* 505 U.S. at pp. 651-652.)[6]  By

requesting continuances or waiving time, a defendant relinquishes the federal right to a

---

[6] In *Doggett,* the period of delay between accusation and trial was eight years six months.

25

speedy trial. Consequently, those periods are not included in calculating the length of the delay. (*People v. Seaton* (2001) 26 Cal.4th 598, 633-634.)

Here there was no violation of defendant's federal right to a speedy trial. (1) The length of the delay totaling 63 days and each of the four continuances were relatively brief; (2) both the government and defendant were equally responsible for the delay, since both the prosecution and defense requested and stipulated to several continuances, up through June 12, 2012; (3) defendant did not assert his right to a speedy trial until almost a year after the original felony complaint was filed and the case was tried about two months after defendant first objected to further continuances; and (4) as to prejudice, defendant has not established prejudice sufficient to constitute a violation of his federal right to a speedy trial because, although his time in custody exceeded his sentence, this was not solely attributable to the four continuances, and the delay from continuances was not uncommonly long. (*Doggett v. United States, supra,* 505 U.S. at pp. 651-652; *Vermont v. Brillon, supra,* 556 U.S. at p. 90.) There also is no evidence or claim that the four trial continuances resulted in an unfair trial.

We therefore simply cannot say, given the circumstances of this case, the 63-day delay constituted a violation of defendant's state or federal constitutional rights to a speedy trial.

## *MARSDEN* HEARING

Defendant maintains that the court's failure to conduct a *Marsden* hearing to explore the reasons for his dissatisfaction with his trial attorney requires reversal of the judgment.

### A. *Procedural Background*

On June 12, 2012, defendant's attorney, Miranda, told the court a continuance of the trial was warranted in part because defendant had requested a *Marsden* hearing. The court continued the trial without holding a *Marsden* hearing at that time.

On July 25, 2012, the trial court again granted a week continuance of the trial over defendant's objection. After the court granted the continuance, defendant complained: "Ever since June I've asked you if I can fire Mr. Miranda and back in June you didn't want to hear me out. You told me you were gonna ask for a Marsden hearing, that there was no courtroom available to even hear me out. I'm tired of these little games Mr. Miranda keeps on playing. He's purposely not subpoenaing any records I'm asking him to. He just started interviewing my witnesses." In response, the court noted defendant had the option of hiring a private attorney or representing himself but that would likely result in delaying the trial to allow additional time for trial preparation. Alternatively, defendant could wait for Miranda, who was already familiar with the case and a "pretty

senior attorney," to try his case.  Noting that the case was not old, the trial court ordered the case continued to August 1, 2012.

*B.  Applicable Law*

The principles set forth in *People v. Marsden, supra,* 2 Cal.3d 118, are well settled.  "'"'"When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation*,* the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance.  [Citation.]  A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result."'  [Citation.]'" (*People v. Abilez* (2007) 41 Cal.4th 472, 487-488; *People v. Vines* (2011) 51 Cal.4th 830, 878.)  Under *Marsden*, if the "'defendant complains about the adequacy of appointed counsel,' the trial court has the duty to 'permit [him or her] to articulate his [or her] causes of dissatisfaction and, if any of them *suggest* ineffective assistance, to *conduct an inquiry* sufficient to ascertain whether counsel is in fact rendering effective assistance.' [Citations.]" (*People v. Mendez* (2008) 161 Cal.App.4th 1362, 1367.)

"'[A] criminal defendant, at any stage of the trial, must be given the opportunity to state reasons for a request for new counsel.' [Citation.]" (*People v. Lopez* (2008) 168 Cal.App.4th 801, 814.)  "After hearing from the defendant, a trial court is within its

discretion in denying the motion unless the defendant establishes substantial impairment of his right to counsel.  [Citation.]  On appeal we review the denial for an abuse of discretion." (*People v. Vera* (2004) 122 Cal.App.4th 970, 979.)

*C.  Analysis*

Defendant contends that on two occasions, on June 12 and July 25, 2012, the trial court violated his constitutional right to effective counsel by not holding a *Marsden* hearing.  We disagree.  Although at the June 12, 2012 hearing, Miranda mentioned that defendant had requested a *Marsden* hearing and the court clerk had said a courtroom was not available at that time for hearing his *Marsden* request, the request was abandoned.  The record indicates that neither defendant nor Miranda made a subsequent request for a *Marsden* hearing.  A request for a *Marsden* hearing was not unequivocally renewed after the June 12 hearing.  Defendant did not request a *Marsden* hearing at the July 20 or July 25, 2012 hearings.

During the July 25, 2012 hearing, defendant's attorney requested a trial continuance.  In response, defendant complained that a courtroom had not been available on June 12 to hold a *Marsden* hearing and that he was annoyed with his attorney and the trial delays.  Defendant, however, did not make an unequivocal request for a new attorney or request a *Marsden* hearing.  (*People v. Dickey* (2005) 35 Cal.4th 884, 920.)  """"Although no formal motion is necessary, there must be 'at least some clear indication by defendant that he wants a substitute attorney.'"  [Citations.]" (*Ibid.*)

Defendant's complaints about his attorney and reference to a *Marsden* hearing on July 25, were made in the context of complaining about the trial court granting his attorney's request to continue defendant's trial. Defendant complained that his attorney was playing games. In response, the court told defendant he could hire another attorney or represent himself, which would likely cause additional delay of the trial, or, alternatively, defendant could wait for his current attorney, who was familiar with defendant's case and an experienced attorney. Since defendant did not indicate he wanted another attorney, the trial court granted a brief trial continuance. Under such circumstances, the trial court did not violate defendant's constitutional right to effective counsel by not holding a *Marsden* hearing.

VI

STATUTE OF LIMITATIONS CHALLENGE

Defendant contends he should be acquitted of his convictions for the lesser included offenses of battery and assault because the charges were time-barred. We disagree. Defendant forfeited his statute of limitations challenge by requesting the trial court to instruct on the lesser included offenses.

Defendant was charged with rape (§ 261, subd. (a)(2); counts 1 - 4) and sexual penetration by a person over the age of 21, with another person under the age of 16 (§ 289, subd. (i)). The charged offenses allegedly took place between January 1, 2003 and July 29, 2005. A felony complaint, filed on June 3, 2011, and the information, filed

30

on February 6, 2012, were both filed more than one year after the date of the alleged offenses.

Prosecution for a felony described in section 290, subdivision (a)(2)(A), which includes rape (§ 261) and sexual penetration (§ 289, subd. (i)), "shall be commenced within 10 years after commission of the offense." (§ 801.1, subd. (b).) Commencement of prosecution occurs when a case is certified to the superior court—that is, when a defendant is held to answer after a preliminary hearing. (See § 804, subd. (c); see, e.g., *People v. Angel* (1999) 70 Cal.App.4th 1141, 1145-1146.) On January 24, 2012, defendant was held to answer for the rape and sexual penetration charges, which led to defendant's convictions for the lesser included offenses of battery and assault.

The jury acquitted defendant of the felony rape and sexual penetration charges and convicted him of the lesser included misdemeanor offenses of battery (§ 242; counts 1-4) and assault (§ 240; count 6), which are subject to a one-year statute of limitations (§ 802, subd. (a)). "The limitation of time applicable to an offense that is necessarily included within a greater offense is the limitation of time applicable to the lesser included offense, regardless of the limitation of time applicable to the greater offense." (§ 805, subd. (b); see *People v. Statum* (2002) 28 Cal.4th 682, 699.)

Defendant asserts that, since he was convicted of misdemeanor battery and assault as lesser included offenses, the applicable limitations period is one year and the conviction time-barred. We disagree.

31

In *People v. Williams* (1999) 21 Cal.4th 335, our high court held that a defendant may raise at any time the statute of limitations for conviction of a charge that in the charging document is, on its face, untimely. But the *Williams* court expressly declined to address what rules "apply to convictions of time-barred lesser offenses when the charged offense is not time-barred." (*Id.* at p. 338.)

In *People v. Stanfill* (1999) 76 Cal.App.4th 1137 (*Stanfill*), the court addressed this question. In *Stanfill,* the defendant requested instructions on a lesser included offense and was convicted of the same. (*Id.* at pp. 1139, 1142.) On appeal, he claimed the lesser offense was time-barred. (*Id.* at pp. 1142, 1144.) The *Stanfill* court held that "a defendant forfeits the right to complain on appeal of conviction of a time-barred lesser included offense where the charged offense was not time-barred and the defendant either requested or acquiesced in the giving of instructions on the lesser offense." (*Id.* at p. 1150.)

Here, the charged offenses of rape and sexual penetration were not time-barred but the lesser included misdemeanor offenses of assault and battery were barred by the one-year statute of limitations. Nevertheless, reversal of the convictions is not required because defendant forfeited his statute of limitations objection by requesting jury instructions on the lesser included offenses, including CALCRIM Nos. 915 (assault), 960 (battery), and 3517 (verdict forms for lesser included offenses).

While reviewing the jury instructions, the trial court granted defendant's request to dismiss count 5 on the ground it was barred by the three-year statute of limitations. Defense counsel made no objections to counts 1 through 4, count 6, or the lesser included offenses of battery and assault, based on the statute of limitations. Defendant thus acquiesced on the lesser included offense instructions by not objecting to them. To acquiesce is to "accept, comply, or submit tacitly or passively." (Webster's Collegiate Dict. (10th ed. 1993) p. 10.) Defendant has therefore forfeited his right to raise on appeal the statute of limitations on the lesser offenses. (*Stanfill, supra,* 76 Cal.App.4th at p. 1150.)

Defendant argues that *People v. Beasley* (2003) 105 Cal.App.4th 1078 controls the issue here and urges this court not to follow *Stanfill.* In *Beasley,* the court reversed the defendant's conviction on the time-barred lesser included offenses. (*Beasley,* at p. 1090.) The court found *Stanfill* inapplicable because "nothing in the record indicates Beasley requested or acquiesced in the instruction on assault as a lesser included offense of assault with a deadly weapon . . . ." (*Ibid.*) But as we discussed above, the record here indicates that defense counsel acquiesced in the giving of the lesser offense instructions by requesting instructions on the lesser included offenses and by not objecting to them based on the statute of limitations. Defendant has therefore forfeited his right to raise the statute of limitations on the lesser offense on appeal. (*Stanfill, supra,* 76 Cal.App.4th at p. 1150.)

We decline defendant's urging that, despite defendant failing to preserve the statute of limitations objection for review, this court nevertheless exercise its discretion to review the issue.

## VII

## RESTITUTION FINE

Defendant correctly asserts that the trial court imposed an improper restitution fine. Defendant argues that the trial court should have credited two of his excess days in custody to eliminate his $100 restitution fine. Defendant was incarcerated for 56 days in excess of his sentence. The trial court appropriately converted 20 of his excess days to satisfy his $1,000 conviction fine, at a rate of $50 per day, but did not similarly satisfy his $100 restitution fine under section 1202.4, subdivision (b), as well.

Under former section 2900.5, subdivision (a), in effect at the time of sentencing, "when the defendant has been in custody . . . , all days of custody of the defendant, including days . . . credited to the period of confinement pursuant to Section 4019, . . . shall be credited upon his or her term of imprisonment, or credited to any fine, including, but not limited to, base fines, on a proportional basis, that may be imposed, at the rate of not less than thirty dollars ($30) per day, or more, in the discretion of the court imposing the sentence. If the total number of days in custody exceeds the number of days of the term of imprisonment to be imposed, the entire term of imprisonment shall be deemed to have been served. In any case where the court has imposed both a prison or jail term of

34

imprisonment and a fine, any days to be credited to the defendant shall first be applied to the term of imprisonment imposed, and thereafter the remaining days, if any, shall be applied to the fine on a proportional basis, including, but not limited to, base fines and restitution fines."

The People agree, as does this court, that the trial court should have used two additional days of custody credit to satisfy defendant's $100 restitution fine. The trial court thus must modify defendant's sentence accordingly.

VIII

DISPOSITION

The trial court is directed to modify defendant's judgment to reflect that defendant's $100 restitution fine is ordered converted to two days in custody, at the rate of $50 a day, and the fine is ordered suspended. In all other regards, the judgment is affirmed. The superior court is ordered to issue a modified abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RICHLI

Acting P. J.

MILLER

J.

35